STATE of Missouri, Respondent,

v.

Paul WEST, Appellant.

Paul WEST, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 61727, 63578.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 16, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 16, 1993.

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

Defendant was convicted by a jury of delivery of cocaine in violation of § 195.211, RSMo Cum.Supp.1990, and was sentenced to twelve years imprisonment as a prior offender. Defendant appeals the trial court's judgment. We affirm.

Defendant does not challenge the sufficiency of the evidence. The evidence, viewed in the light most favorable to the verdict, shows that on August 13, 1991, defendant sold a substance believed to be crack cocaine to an undercover police officer, Detective Lloyd. Defendant fled and was pursued by the arresting team of officers, but got away. One week later, while defendant was in custody at the police station, Detective Lloyd identified defendant as the person who had sold him the substance. The substance was then analyzed and determined to be cocaine.

Following voir dire, defendant sought to exercise all six of his statutory peremptory challenges to strike white venirepersons. The State noted all six challenges were for white individuals and that defendant had only questioned white venirepersons during his voir dire. The prosecutor then requested that appellant provide race neutral reasons for exercising all his peremptory strikes against white individuals. Defendant objected, but the trial court overruled the objection and required defendant to present race neutral explanations for those challenges. The

trial court then allowed all but one of defendant's peremptory strikes.

Defendant's sole point on appeal is that the trial court erred in sustaining the State's motion to compel defendant to give race neutral explanations for his exercise of peremptory strikes removing white jurors and in denying defendant his exercise of a peremptory strike against a white male venireperson. Defendant's point contains three arguments, each of which will be addressed separately.

■ Defendant argues that *Batson* does not apply to white venirepersons on a predominantly white venire panel. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant states that the use of peremptory strikes to remove white venirepersons in this case did not in any way offend either the Missouri or federal constitutions. We disagree.

Defendant posits that the real question before this court is: Are white venirepersons a cognizable racial group for purposes of the equal protection clause? He concludes that they are not. Defendant points out that every United States Supreme Court case in this area to date has dealt with venirepersons who were members of minority racial groups that have been historically subject to discrimination. Defendant interprets this as signifying that the rationale of *Batson* and its progeny does not encompass the peremptory striking of white venirepersons who sit on a venire panel that is predominantly composed of white venirepersons. Although not articulated by defendant, the logical conclusion of this argument is that it is constitutionally permissible for minority defendants to strike white venirepersons based solely upon their race.

We cannot agree with defendant's position that white venirepersons are not protected from discrimination by the equal protection clause. "*Batson* challenges were meant to protect not only the defendant's equal protection rights but also the equal protection rights of excluded venirepersons." *State v. Parker,* 836 S.W.2d 930, 933 (Mo. banc 1992). "It is an affront to justice to argue that a fair trial includes the right to discriminate against a group of citizens based upon their race." *Georgia v. McCollum,* 505 U.S. ——, ——, 112 S.Ct. 2348, 2350, 120 L.Ed.2d 33, 50 (1992). In *McCollum,* the United States Supreme Court made no reference to the race of the venirepersons when it stated that "the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party." *Id.* The Court held "that the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges. Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges." *Id.* at ——, 112 S.Ct. at 2359, 120 L.Ed.2d at 51.

The United States Supreme Court had previously addressed this issue, declaring: "[r]ecognizing the impropriety of racial bias in the courtroom, we hold the race-based exclusion violates the equal protection rights of the challenged jurors." *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, ——, 111 S.Ct. 2077, 2080, 114 L.Ed.2d 660 (1991). The Court went on to emphasize its position against any form of racial discrimination in the judicial process, stating: "[r]ace discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality." *Id.* at ——, 111 S.Ct. at 2087. "If our society is to continue to progress as a multiracial democracy, it must recognize that the automatic invocation of race stereotypes retards that progress and causes continued hurt and injury." *Id.* at ——, 111 S.Ct. at 2088. Justice Scalia interpreted this decision as applying to criminal defendants, claiming "[i]n criminal cases, *Batson* already prevents the prosecution from using race-based strikes. The effect of today's decision (which logically must apply to criminal prosecutions) will be to prevent the defendant from doing so—so that the minority defendant can no longer seek to prevent an all-white jury, or to seat as many jurors of his own race as possible." *Id.* at ——, 111 S.Ct. at 2095 (Scalia, J., dissenting).

We also read *Edmonson*, as well as *McCollum* and *Parker*, as prohibiting a criminal defendant, minority or otherwise, from exercising race-based peremptory strikes of potential jurors.[1]

Defendant's next argument is that the prosecutor failed to establish a prima facie case for discrimination. The Missouri Supreme Court, finding that the prima facie showing requirement under *Batson* is not constitutionally required, held that trial courts need no longer make such a finding. *Parker*, 836 S.W.2d at 940. The Court set forth the procedure to be followed by a trial court when confronted with a timely *Batson* objection:

> First, the [objecting party] must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the [other party] and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the [other party] to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the [other party] is able to articulate an acceptable reason for the strike, the [objecting party] will need to show the [other party's] proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

*Id.* at 939.

■ Here, defendant attempted to exercise all six of his peremptory challenges to strike white venirepersons. The prosecutor, noting that all six challenges were for white venirepersons and that defendant had only questioned white venirepersons during voir dire, requested the trial court to require defendant to provide race-neutral explanations for his peremptory strikes, which it did. Defendant sought to peremptorily strike venireman Mueller, stating that he did not seem to want to talk to defense counsel during voir dire and was "an older gentleman with previous jury experience." Defendant also claimed that based on the way Mueller was sitting in his chair, he was not paying attention and not "particularly interested in listening to any of the proceedings." The prosecutor countered that venireman Mueller did respond to voir dire questioning and was similarly situated to venireman Abbott, who was also an older gentleman with previous jury experience but was not peremptorily struck by defendant.

"In determining whether [the party] has carried the burden of proof and established the existence of purposeful discrimination, the trial court should take into account a variety of factors. The chief consideration should be the plausibility of [the party's] explanations in light of the totality of the facts and circumstances surrounding the case." *Id.* The trial court, after hearing defendant's proffered explanations for the strikes and the prosecutor's arguments that these reasons were pretextual, allowed all of defendant's peremptory strikes except Mueller.

■ The trial court's determination regarding purposeful discrimination is a finding of fact and will not be overturned on appeal unless clearly erroneous. *State v. Gray*, 849 S.W.2d 115, 117 (Mo.App.1993). The determination is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* After reviewing the record, we are not left with such a conviction. We find, therefore, that the trial court's refusal to allow venireman Mueller to be peremptorily struck by defendant was not clearly erroneous.

■ Defendant's final argument is that the trial court erred in refusing to allow his peremptory strike of venireman Mueller because had he stricken a black venireperson, he would have waived his Sixth Amendment right to a jury composed of a fair cross-section of the community. After all unqualified venirepersons had been removed for cause and the state exercised its peremptory strikes, only three black individuals remained on the venire panel. Defendant claims he

---

1. We share Justice O'Connor's concerns about whether criminal defendants and their lawyers, when exercising peremptory challenges as part of a defense, are state actors for purposes of an equal protection challenge. See *McCollum*, — U.S. at — — , 112 S.Ct. at 2361–64, 120 L.Ed.2d at 54–58 (O'Connor, J., dissenting). However, we are constrained by the Court's constitutional interpretations.

had an absolute and inviolable right to include those three qualified black venirepersons on his jury in order to protect his right to be tried by a jury composed of a fair cross-section of the community. We disagree.

The United States Supreme Court has held "a prohibition of the discriminatory exercise of peremptory challenges does not violate a defendant's Sixth Amendment right to a trial by an impartial jury." *McCollum,* —— U.S. at ——, 112 S.Ct. at 2358, 120 L.Ed.2d at 51.

■ In Missouri, although a defendant has the right to have the petit jury drawn from a venire that represents a fair cross-section of the community, the fair cross-section requirement does not extend to the composition of the petit jury. *State v. Jacobs,* 813 S.W.2d 318, 321 (Mo.App.1991).

In order to establish a prima facie violation of the cross-section requirement, the defendant must show:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*State v. Cooksey,* 805 S.W.2d 709, 710 (Mo. App.1991).

■ Not only did defendant fail to establish a prima facie violation, but he did not even allege underrepresentation of blacks on the venire panel. Defendant instead claims that he was entitled to have the three black venirepersons on the petit jury, leaving him only with the option of using all his peremptory strikes to remove white venirepersons in order to preserve that right. However, a defendant has no right to a jury of a particular racial composition. *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975); *State v. Jordan,* 751 S.W.2d 68, 73 (Mo.App.1988). Since defendant did not have the right to a jury of a particular racial composition, he was not enti-

tled to have the three black venirepersons on the petit jury.

We find the trial court did not err in sustaining the State's motion to compel defendant to give race neutral explanations for his exercise of peremptory strikes removing white venirepersons and in denying defendant his exercise of a peremptory strike against a white venireperson.

The judgment is affirmed.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.